JDG:CMM
F. #2014R02087

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 02 2015 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

FREDERICK MEI,

          Defendant.

I N F O R M A T I O N

Cr. No. 15-429 (SJF)
(T. 18, U.S.C., §§ 981(a)(1)(C); 1349 and 3551 et seq.; T. 21 U.S.C. § 853(p); T. 28, U.S.C. § 2461(c))

- - - - - - - - - - - - - -X

THE UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

### The Town of Oyster Bay

1. The Town of Oyster Bay (the "TOB") was a municipality in Nassau County, New York ("Nassau County"). The TOB was comprised of 18 villages and 18 hamlets, all of which were located in Nassau County. The TOB awarded contracts to provide services to the public, including but not limited to concessions at the TOB's municipal beaches and golf courses.

### The Defendant and Co-Conspirator #1

2. In or about and between 1986 and the present, both dates being approximate and inclusive, the defendant FREDERICK MEI, a resident of Bayville, New York, was employed by the TOB in a variety of positions, including Deputy Town Attorney.

As a Deputy Town Attorney, MEI's duties included negotiating and drafting contracts, leases, and concession agreements such as the agreements described in more detail below.

3. At various times, Co-Conspirator #1, an individual whose identity is known to the U.S. Attorney, was a concessionaire who operated businesses that were awarded various agreements with the TOB, including concession agreements to operate various food concessions located within the TOB.

## The Criminal Scheme

I. Background

4. In or about and between January 2011 and February 2015, both dates being approximate and inclusive, in connection with his employment at the TOB, the defendant FREDERICK MEI, together with others, engaged in a scheme to receive bribes and kickbacks from Co-Conspirator #1 in exchange for MEI's assistance in obtaining the TOB's guarantee of certain loans from a private corporate financing company (the "Lender") to entities owned and operated by Co-Conspirator #1, in connection with Co-Conspirator #1's status as a TOB concessionaire (the "TOB Loan Scheme"). The TOB approved amendments to Co-Conspirator #1's concession agreements with the TOB that indirectly guaranteed multi-million dollar loans provided to Co-Conspirator #1 by the Lender. Pursuant to these amendments, if Co-Conspirator #1's entities defaulted on the loans, the TOB would be responsible for repaying the entire amount of the loan to the Lender.

5. Specifically, the TOB guaranteed two loans made by the Lender to two entities owned and operated by Co-Conspirator #1, totaling approximately $20 million. The first loan (Loan #1), which closed on or about November 18, 2011, was a $7,843,138 loan to

one of Co-Conspirator #1's businesses, ("Co-Conspirator Entity #1"). The second loan ("Loan #2"), which closed on or about June 22, 2012, was a $12,273,748 loan to another of Co-Conspirator #1's businesses ("Co-Conspirator Entity #2"). In furtherance of the negotiation of Loan #1, Loan #2 and potential additional financing for other TOB concessions, MEI, Co-Conspirator #1 and the Lender sent and received interstate e-mail communications within the Eastern District of New York.

II. Loan #1 and Payments to MEI

6. Co-Conspirator #1, through Co-Conspirator Entity #1, had a concession agreement with the TOB to operate a restaurant and catering facility on property owned by the TOB. On or about November 18, 2011, TOB officials signed an amendment to the concession agreement, which, in effect, acted as an indirect guarantee of Loan #1. Upon finalizing this amendment, the Lender agreed to issue Loan #1, which closed and was funded in November 2011.

7. Approximately one week after Loan #1 closed, Co-Conspirator #1 gave MEI an envelope with five checks, each in the amount of $5,000, for a total of $25,000; the five checks were each made out to "cash."

III. Loan #2 and Payments to MEI

8. Loan #2 was structured in the same fashion as Loan #1. Co-Conspirator #1, through Co-Conspirator Entity #2, had a concession agreement with the TOB to operate the concession stands at one of the TOB's municipal beaches. On or about June 19, 2012, TOB officials signed an amendment to the concession agreement, which, in effect, acted as an indirect guarantee of Loan #2.

9. Approximately one week after Loan #2 closed, Co-Conspirator #1 gave MEI a second payment: another envelope with five more checks, each in the amount of $5,000, for a total of $25,000; the five checks were again each made out to "cash."

10. In addition, Co-Conspirator #1 paid for MEI and a relative of MEI's travel to South Korea from July 21, 2012 through July 29, 2012.

IV. Financing for Additional TOB Beaches Concessions

11. In or about and between late 2012 and 2013, Co-Conspirator #1 entered into a contract with the TOB to run the concessions at two additional TOB municipal beaches. Co-Conspirator #1 sought a loan of approximately $12 million from the Lender for improvements to be made to the facilities located at those two beaches. In furtherance of Co-Conspirator #1's attempt to obtain financing from the Lender, MEI, among other things, arranged for meetings between the Lender and TOB officials. The Lender did not ultimately extend this loan to Co-Conspirator #1 or any of Co-Conspirator #1's entities.

12. In or about September 2012, Co-Conspirator #1 began to give MEI cash, paid on a monthly basis, to pay for MEI's lease for a BMW automobile. The total amount of the lease was $36,000. Co-Conspirator #1 continued these payments to MEI through February 2015.

## HONEST SERVICES FRAUD CONSPIRACY

13. The allegations contained in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

14. In or about and between January 2011 and February 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant FREDERICK MEI, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud and deprive the citizens of the TOB and the government of the TOB of their intangible right to the honest services of MEI through bribery and kickbacks, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

15. The United States hereby gives notice to the defendant FREDERICK MEI that, upon his conviction of the charged offense, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any property, real or personal, constituting or derived from proceeds traceable to a violation of such offense.

16. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation, including but not limited to any of the following: any and all pensions, annuities or other benefits MEI may be entitled as a result of his employment with the TOB and any and all proceeds traceable thereto.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

KELLY T. CURRIE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

F. #2014R02087
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

*FREDERICK MEI*,

Defendant.

## INFORMATION

(T. 18, U.S.C., §§ 981(a)(1)(C); 1349 and 3551 et seq.; T. 21 U.S.C. § 853(p); T. 28, U.S.C. § 2461(c))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* \_\_\_\_\_

_____
*Clerk*

*Bail, $* _____

*Catherine M. Mirabile, Raymond A. Tierney, Lara Treinis Gatz*
*Assistant U.S. Attorneys*